UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF NEW YORK

UNITED STATES OF AMERICA,

v.

MICHELLE BALKUM,

                   Defendant.

Case # 22-CR-06188-FPG-MJP-2

DECISION AND ORDER

**INTRODUCTION**

On November 29, 2022, a Grand Jury returned an indictment charging Defendant Michelle Balkum with (1) narcotics conspiracy (2) possession of heroin with intent to distribute; (3) possession of fentanyl and ANPP with intent to distribute; (4) possession of cocaine with intent to distribute; (5) use of premises to manufacture, distribute, and use a controlled substance; and (6) possession of a firearm in furtherance of drug trafficking crimes. ECF No. 57. In Count 5, the indictment alleges that Defendant Balkum and her codefendant used and maintained the premises at 277 Wilkins Street in the City of Rochester, New York for the purpose of manufacturing, distributing, and using heroin, fentanyl, and cocaine. *Id.* at 3.

Defendant filed an omnibus motion seeking, among other things, severance and suppression of statements that she allegedly made to law enforcement officers while in custody. ECF No. 67 at 24-30; *see also* ECF No. 95 (post-hearing submission in support of suppression). Magistrate Judge Mark W. Pedersen held oral argument on Defendant's motion on April 13, 2023, ECF No. 75, and subsequently held an evidentiary hearing on May 30, 2023 and June 15, 2023. ECF Nos. 77, 79. The parties submitted post-hearing filings in October 2023, and on November 13, 2023, Magistrate Judge Pedersen issued a Report and Recommendation ("R&R"),

1

recommending that this Court (1) deny Defendant's motion to sever and (2) grant Defendant's motion to suppress statements. ECF No. 103.

The Court granted the parties' multiple extension requests and excluded time pursuant to 18 U.S.C. § 3161(h)(7)(A). *See* ECF Nos. 105, 107, 109, 111, 113, 114. The government then timely filed its objections to the R&R on December 18, 2023. ECF No. 110. Defendant responded on January 1, 2024 and the government filed a reply on January 19, 2024. ECF Nos. 110, 115. The R&R is now ripe for review and decision.

For the reasons explained below, the Court ADOPTS in part and REJECTS in part Magistrate Judge Pedersen's R&R. Defendant's motion to sever is DENIED. Defendant's motion suppress statements is also DENIED.

## BACKGROUND

On the morning of October 21, 2021, law enforcement officers executed a search warrant at 277 Wilkins Street in the City of Rochester, New York. ECF No. 85 at 10; ECF No. 103 at 11. When the officers entered, Defendant and her codefendant were both in the living room on the first floor. ECF No. 73 at 2. In the "primary bedroom," the officers found men's and women's clothing, United States currency, a purse, and a handgun. *Id.* at 2-3. A pair of men's denim pants contained a wallet with a New York state identification card bearing codefendant's name and address. *Id.* at 2. Officers also found cellular telephones and a digital scale. *Id.* at 3. Outside, the officers discovered a quantity of substances believed to be crack cocaine, powder cocaine, heroin and fentanyl, along with new and unused wax paper envelopes in black plastic bags hidden under the siding of the house. *Id.*

Law enforcement officers also observed a set of keys attached to a pink pepper spray holster and a key fob for a BMW vehicle. ECF No. 73 at 4-5. A BMW was parked in the driveway,

which Defendant stated was hers. *Id.* at 5. She also agreed to let officers search the vehicle, which led to the recovery of a black backpack containing $36,411 in United States currency from the trunk of the vehicle. *Id.*

During the search, Rochester Police Department officer Matthew Bennetti was responsible for "stand[ing] by with" Defendant and her codefendant while "the search teams started the search." ECF No. 103 at 12. According to Officer Bennetti, Defendant "did not have anything, any underwear on upon entry." *Id.* She was covered with a blanket, handcuffed, and "considered to be detained and not free to leave." *Id.* Because Defendant had neither pants nor shoes, the officers asked her about clothes and shoes that she could wear. Officer John Kent asked if she had any pants, while Officer Mark Allen asked her "something to the effect of 'are those your sandals okay or are these your sandals.'" *Id.* at 13.

Officer Bennetti transported Defendant from 277 Wilkins Street to the Public Safety Building ("PSB"). ECF No. 97 at 4. She did not give a statement to law enforcement. ECF No. 73 at 5.

## LEGAL STANDARD

A district court reviews those portions of a Magistrate Judge's report and recommendation to which a party has timely objected *de novo*. Fed. R. Crim. P. 59(b)(3). When a party does not object to a portion of a report and recommendation, or when the objections are conclusory, general, or without legal support, a district court reviews those portions for clear error. *See United States v. Preston*, 635 F. Supp. 2d 267, 269 (W.D.N.Y. 2009). After reviewing the report and recommendation and the objections thereto, a district court "may accept, reject, or modify the recommendation." Fed. R. Crim. P. 59(b)(3). In addition, "[t]he Second Circuit has instructed that where a Magistrate Judge conducts an evidentiary hearing and makes credibility findings on

disputed issues of fact, the district court will ordinarily accept those credibility findings." *United States v. Lawson*, 961 F. Supp. 2d 496, 499 (W.D.N.Y. 2013); *see also Carrion v. Smith*, 549 F.3d 583, 588 (2d Cir. 2008).

## DISCUSSION

### I.   Severance

Defendant argues that severance is warranted under Federal Rules of Criminal Procedure 8 and 14.  *See* ECF No. 67 ¶¶ 72-80.  The government responds that Defendant has failed to demonstrate that the potential for prejudice from a joint trial is sufficiently severe to outweigh the judicial economy that would be realized by avoiding multiple trials.  ECF No. 73 at 16-17.  Defendant has not objected to Magistrate Judge Pedersen's recommendation that this Court deny severance.  The Court therefore reviews this portion of the R&R for clear error.  *See United States v. Preston*, 635 F. Supp. 2d at 269.

#### A.  Rule 8

Magistrate Judge Pedersen concluded that joinder was proper under Rule 8(b).  ECF No. 103 at 4-5.  Specifically, he found that (1) Defendant's conclusory statements were insufficient to find that joinder was improper and (2) Defendant was properly joined because the indictment alleges a conspiracy in which both defendants are alleged to have participated.  *Id.*  Having reviewed this portion of Magistrate Judge Pedersen's R&R for clear error and having found none, the Court adopts Magistrate Judge Pedersen's conclusion that joinder was proper under Rule 8(b).

#### B.  Rule 14

Magistrate Judge Pedersen likewise concluded that severance was not warranted under Rule 14.  ECF No. 103 at 5.  He found that even if Defendant had a minimal role in the alleged conspiracy and criminal conduct, severance would not be warranted.  *Id.* at 7.  He determined that

Defendant's conclusory allegations of spillover prejudice were insufficient to meet her heavy burden of demonstrating "substantial prejudice resulting in an unfair trial." *Id.* at 8 (quoting *United States v. Carmichael*, No. 14-CR-6136, 2016 WL 9273619, at *5 (W.D.N.Y. Mar. 11, 2016). Having reviewed this portion of the R&R for clear error and having found none, the Court adopts Magistrate Judge Pedersen's conclusion that Defendant's assertions of "guilt by association" and "spillover prejudice" do not warrant severance.

## II.     Suppression of Statements

Defendant seeks to suppress the statements she made at 277 Wilkins Street on the grounds that they were elicited without the warnings required under *Miranda v. Arizona*, 384 U.S. 436 (1966) and in violation of her right against self-incrimination. *See* ECF No. 67 ¶¶ 86-87; *see also* ECF No. 112 at 3-6. She argues that the statements were involuntary and the product of interrogation, as she was handcuffed and detained while under police observation. ECF No. 95 at 5; ECF No. 112 at 5. Moreover, she argues that the officers' questions about clothing were "of the sort that an officer should reasonably know is likely to elicit an incriminating response." ECF No. 112 at 5. Magistrate Judge Pedersen recommended that Defendant's motion to suppress be granted on the grounds that she was subject to custodial interrogation without being informed of her *Miranda* rights. *See* ECF No. 103 at 17-20.

The government objected to Magistrate Judge Pedersen's recommendation, arguing that, rather than being the type of question that an officer should reasonably know is likely to elicit an incriminating response, asking Defendant about clothing to prepare for transport to the PSB "would have been a necessity." ECF No. 110 at 6. Although the responses "may have ultimately been incriminating," the questions were, the government argues, "entirely reasonable under the circumstances and were not the sort of questions officers should have known were reasonably

5

likely to elicit an incriminating response." *Id.* Because the government has timely objected to Magistrate Judge Pedersen's recommendations with respect to Defendant's motion to suppress, the Court reviews that portion of the R&R *de novo*. *See United States v. Preston*, 635 F. Supp. 2d at 269.

### A. Defendants' Statements at 277 Wilkins Street

At issue are three sets of statements[1] that Defendant made at 277 Wilkins Street on the morning of October 21, 2021:

1. At approximately 6:42 a.m. and 6:55 a.m., Defendant acknowledged (1) that she had pants in the room, (2) which room the pants were in, and (3) that she had turquoise pajama pants in response to a question about the type and color of pants. This exchange can be seen on Officer Bennetti's and Officer Kent's body-worn camera footage.

2. At approximately 7:06 a.m., Defendant acknowledged that an item of clothing would be acceptable for her to wear. This exchange can be seen on Officer McClellen's body-worn camera footage.

3. At approximately 7:31 a.m., Defendant acknowledged (1) that she had a pair of shoes in a nearby room when an officer asked her about shoes and (2) that flipflops would be alright when asked. This exchange can be seen on Officer Bennetti's and Officer Allen's body-worn camera footage.

At least three Rochester Police Department officers, Officers Bennetti, Kent, and McClellan, were tasked with watching over Defendant while law enforcement conducted the

---

[1] In response to Defendant's omnibus motion, the Government identified five sets of statements it planned to use at trial. ECF No. 73 at 17-19. During the evidentiary hearing, on May 30, 2023, the government "affirmatively stated that it did not intend to offer" the fourth and fifth sets, and the parties agreed that those statements did not need to be addressed at the hearing. *See* ECF No. 103 at 11 n.6; *see also* ECF No. 110 at 3 n.2 ("The government acknowledged it would not seek to utilize the fourth and fifth sets of statements in its direct case.").

6

search of 277 Wilkins Street. Tr. 11:8-21, 34:9-14, 77:1-5, 83:9-13.[2] According to Officer Kent, this involved assisting the individuals if, for example, they were cold or needed to use the bathroom. *Id.* at 11:8-21. A fourth officer, Officer Allen was working the "perimeter post" and later brought in to assist inside the home. *Id.* at 55:13-15. Officers Kent and McClellan stated that they were not involved in the search. *Id.* at 63:22-24; 77:1-5.

When the officers arrived, Defendant was, at the very least, not wearing any pants. According to Officer Bennetti, Defendant did not have "anything, any underwear on, which is why" he believed she had a blanket over her. *Id.* at 23:11-13. According to Officer Kent, she was wearing underwear but was not wearing pants. *Id.* at 42:24–43:8; 46:14–47:1; 43:9–13. Throughout the search, Defendant was handcuffed and sitting on a couch. *Id.* at 22:19-22; 23:14-16; 28:4-18. According to Officer Bennetti, she appeared intoxicated, but not under the influence of drugs or sick. *Id.* at 26:3-9. She was not free to leave, and at no point did any of the officers involved give her *Miranda* warnings. *Id.* at 25:19-23; 27:1-2; 47:6-8, 65:6-11.

Defendant did not initiate any of the conversations involving her clothing. *Id.* at 46:24-47:1. Instead, at approximately 6:43 a.m., Officer Kent first asked if she had any pants on underneath the blanket and whether she had a pair of pants that she could put on somewhere. *Id.* at 42:24-25; 43:1-8. At approximately 6:56 a.m., while Defendant was sitting on a couch with a blanket covering her, Officer Kent asked what kind of pants to get for her or where the pants would be. *Id.* at 45:22-24. About ten minutes later, Officer McClellan observed Officer Bennetti and investigator Ryan Beyea bringing clothing to Defendant because she was getting ready to be transported to the PSB. *Id.* at 85:2-22. Officer Allen later observed a woman who was being

---

[2] This discussion is drawn from the officers' testimony at the evidentiary hearing held before Magistrate Judge Pedersen on May 30, 2023 and June 15, 2023, ECF Nos. 77, 79. "Tr." refers to the transcripts of the evidentiary hearing, ECF Nos. 85, 86.

escorted out of the kitchen without shoes, and, asked if she wanted shoes to wear. *Id.* at 61:22-25. According to Officer Bennetti, Officer Allen asked Defendant something to the effect of "are those your sandals okay or are these your sandals." *Id.* at 29:24-30:14.

Officers Bennetti, Kent, and Allen all explained in one way or another that the officers asked Defendant about her clothing to prepare her for transport to the PSB. Officer Bennetti explained that he has asked similar questions in the past to "try to do their best to make them comfortable leaving" and that "no matter what, [they] want them to have shoes on because if they step on something or hurt themselves, [the officers] own that because they're in [their] custody at that point. So [they] do everything [they] can to make sure they get footwear or appropriate clothing for the elements that they're going to go outside in." *Id.* at 25:8-19. Likewise, Officer Kent explained that he asked about her pants to see if there was something they could put on her so she did not have to walk outside in her underwear before being transported to the PSB. *Id.* at 43:9-13; *see also id.* at 46:1-5 (explaining that "in order to . . . transport [a person] . . . [they] would put pants on her."). He did acknowledge however, that he has previously "arrested people just wearing blankets to cover up their bottom parts" and that he supposed Defendant could have been transported in the blanket. *Id.* at 47:23-48:8. Nevertheless, he typically dressed people to avoid "parad[ing] people down the streets in their underwear or wrapped in a blanket." *Id.* at 48:12-21. Finally, Officer Allen stated that he asked about the shoes because he was "under the impression she was going to be leaving the location and [] didn't want her to walk outside without any shoes on." *Id.* at 61:22-62:2.

### B. Defendant's Motion to Suppress

At issue is whether Defendant's statements were the product of custodial interrogation.[3] "Statements made during custodial interrogation are generally inadmissible unless a suspect has first been advised of his rights." *United States v. Gelzer*, 50 F.3d 1133, 1138 (2d Cir. 1995) (citing *Miranda v. Arizona*, 384 U.S. 436, 444 (1966)). To constitute a custodial interrogation, there must be an "interrogation" that occurs while the defendant is in custody. *United States v. FNU LNU*, 653 F.3d 144, 148 (2d Cir. 2011). "[T]he term 'interrogation' under *Miranda* refers not only to express questioning, but also to any words or actions on the part of the police (other than those normally attendant to arrest and custody) that the police should know are reasonably likely to elicit an incriminating response." *Acosta v. Artuz*, 575 F.3d 177, 189 (2d Cir. 2009) (quoting *Rhode Island v. Innis*, 446 U.S. 291, 301 (1980)); *see also United States v. Broughton*, 600 F. App'x 780, 783 (2d Cir. 2015) (summary order); *Gelzer*, 50 F.3d at 1138.

Whether the police should have known that their words or actions were reasonably likely to elicit an incriminating response depends upon the totality of the circumstances. *Broughton*, 600 F. App'x at 783 (quoting *Acosta*, 575 F.3d at 191). "[W]hile the analysis is properly focused on what the officer objectively should have known to be reasonably likely to elicit an incriminating response, . . . the subjective intent of an officer in asking a question is a relevant, though not conclusive, part of that inquiry." *United States v. Tartaglione*, No. 16-CR-832, 2023 WL 2237903, at *18 (S.D.N.Y. Feb. 27, 2023); *see also Innis*, 446 U.S. at 301 n.7 ("This is not to say that the intent of the police is irrelevant, for it may well have a bearing on whether the police should have known that their words or actions were reasonably likely to evoke an incriminating response."). The relationship of the question asked to the crime suspected is highly relevant. *United States v.*

---

[3] The government does not dispute that Defendant was in custody at the time of the statements, focusing its objections on whether the statements constituted "interrogation" for the purposes of *Miranda*. *See* ECF No. 110 at 5-6.

9

*Casiano*, 862 F. Supp. 52, 54 (S.D.N.Y. 1994) (citing *United States v. Gonzales-Mares*, 752 F.2d 1485, 1489 (9th Cir. 1985)). But, the mere fact that a defendant's statement "ultimately provide[s] incriminating information does not in itself render the question interrogative." *Id.* (citing *United States v. Gotchis*, 803 F.2d 74, 79 (2d Cir. 1986)).

Here, the Court cannot conclude that the officers should have known that asking Defendant about clothes that she could wear during transport were reasonably likely to elicit an incriminating response. *Gelzer*, 50 F.3d at 1138 (citing *Innis*, 384 U.S. at 302). While there are cases in which an officer should know that a question about a suspect's clothing is reasonably likely to elicit an incriminating response, this is not one of them. In *United States v. Toole*, for example, the court concluded that questions directing the defendant to identify as his personal property a pair of shoes seized from a vehicle were the functional equivalent of interrogation. No. 06-CR-6024L, 2008 WL 2323362, at *19 (W.D.N.Y. Jan. 11, 2008), *report and recommendation adopted*, 2008 WL 2354959 (W.D.N.Y. June 3, 2008). But in *Toole*, unlike this case, the seemingly innocuous nature of the questions was belied by the circumstances. The officer in *Toole* knew both that the shoes had been seized from a vehicle subject to a police search and contained potentially incriminating evidence in the form of a substantial amount of cash. *See* 2008 WL 2323362, at *19. Here, however, Officers Kent and McClellan were not involved in the search of the premises, Officer Bennetti was not aware of anything that had been found there, and there is no indication that the clothing and shoes had already been seized as part of the search.

The circumstances here more closely parallel those in *United States v. Casiano*, in which, after executing a search warrant and prior to transporting the defendant, a Bureau of Alcohol, Tobacco and Firearms ("ATF") agent asked the defendant whether a certain coat belonged to him. *See* 862 F. Supp. at 54. Although the suspect in *Casiano* had worn a coat during a drug transaction,

and marked cash from that transaction was found in the coat, the court concluded that because (1) there was insufficient evidence to conclude that the ATF agent, based on what he knew at the time, should have known that the coat was connected to the drug transaction and (2) the question was "routine in nature, with the intention solely of preparing the defendant for transport in cold weather," *id.* at 55, the agent "could not reasonably be expected to have known that his question was reasonably likely to elicit an incriminating response," and declined to suppress the defendant's statement identifying the coat as his. *Id.*; *see also United States v. Annucci*, No. 06 Cr. 982, 2007 WL 1310156, at *1, 5 (S.D.N.Y. May 3, 2007) (questions about where defendant's "clothing was located, if he had any shoes without laces, and if he was going to need any medication for the next twenty-four hours" were not reasonably likely to elicit an incriminating response).

On this record, too, there is insufficient basis to conclude that the officers should have known that asking Defendant about clothing and shoes she could wear while being transported to the PSB was reasonably likely to elicit an incriminating response. *See Innis*, 446 U.S. at 300-01; *Casiano*, 862 F. Supp. at 54-55. There is no indication that the officers knew or had reason to know that her clothing was likely to contain, or be, incriminating evidence. *Cf. Toole*, 2008 WL 2323362, at *19. Moreover, the relationship of the questions about Defendant's clothing to the crimes suspected is too attenuated to render the questions interrogative. *See Casiano*, 862 F. Supp. at 54. The questions did not, either explicitly or implicitly, seek information about the evidence that the search team had recovered. *Cf. Toole*, 2008 WL 2323362, at *19; *United States v. McGrain*, No. 20-CR-6113, 2021 WL 1169195, at *9 (W.D.N.Y. Mar. 29, 2021) (questions about a sweatshirt identifying the location where defendant camped and attended concerts were reasonably likely to elicit an incriminating response where an interrogating officer knew of Facebook messages from defendant to victim about camping and attending concerts together).

"Considering [the] questions against the backdrop of the circumstances that then existed, including the fact that [Defendant] was about to be transported to the [PSB]," the officers' questions were not "tantamount to interrogation" and Defendant's statements in response to them are not subject to suppression. *United States v. Widner*, No. 09-CR-6225, 2010 WL 4861508, at *3 (W.D.N.Y. Nov. 30, 2010); *see also Casiano*, 862 F. Supp. at 54.

The Court has also considered Officer Bennetti's testimony that Defendant appeared intoxicated, but not under the influence of drugs. A defendant's intoxication may be relevant in determining whether she was subject to custodial interrogation. *See Pennsylvania v. Muniz*, 496 U.S. 582, 612-13 (1990) (Marshall, J. concurring in part and dissenting in part) (noting that questions that would not amount to the functional equivalent of interrogation when asked of a sober person might when asked of an intoxicated person). Here, however, nothing in the record indicates that Defendant's apparent intoxication affected her perception of the officers' questions such that the officers should have known their questions about her clothing and shoes were reasonably likely to elicit an incriminating response because of it.[4]

Finally, while not determinative, the officers' intent supports the Court's conclusion. *See Tartaglione*, 2023 WL 2237903, at *18 ("[T]he subjective intent of an officer in asking a question is a relevant, though not conclusive, part of [the] inquiry."). Officers Bennetti, Kent, and Allen all explained that they asked Defendant about her clothing to ensure that she was dressed properly for transport. *See* Tr. 25:8-19, 47:23-48:8, 61:22-62:2 (testimony explaining that officers sought to ensure that Defendant was dressed appropriately for the weather and to avoid her being seen in

---

[4] In response to the government's objections, Defendant also argues that her statements were involuntary because she was handcuffed and detained. ECF No. 112 at 5. Her apparent intoxication, alone or in conjunction with the fact that she was in custody, does not demonstrate that her statements were involuntary. *See Schumaker v. Kirkpatrick*, 808 F. App'x 47, 48 (2d Cir. 2020) (summary order) (identifying age, education level, failure to give Miranda warnings, length of detention, nature of interrogation, and use of physical punishment as factors to consider in determining voluntariness); *see also Tankleff v. Senkowski*, 135 F.3d 235, 242 (2d Cir. 1998) (noting that voluntariness and Miranda claims are interrelated but analytically distinct).

12

public in only her underwear or a blanket). As Magistrate Judge Pedersen concluded, "[i]t is clear . . . that, based upon [their] testimony, the officers never intended to obtain evidence to use against Defendant when asking" about her clothing. *See* ECF No. 103 at 19. Although this is not conclusive, considering the totality of the circumstances, it lends further support to the Court's conclusion that the officers' questions were not of the kind that they should have known were reasonably likely to elicit an incriminating response.

Accordingly, the Court is persuaded that, under the circumstances, the questions about Defendant's clothing and shoes were routine in nature, aimed at preparing Defendant for transport, and the officers "could not reasonably be expected to have known that [their questions were] reasonably likely to elicit an incriminating response." *Casiano*, 863 F. Supp. at 55. Defendant's statements about her clothing and shoes were not, therefore, the product of custodial interrogation. *Innis*, 446 U.S. at 300-01; *Broughton*, 600 F. App'x at 783. Accordingly, Defendant's motion to suppress those statements must be denied.

## CONCLUSION

For the foregoing reasons, the Court ADOPTS IN PART and REJECTS IN PART Magistrate Judge Pedersen's R&R, ECF No. 103. Defendant's motion to sever, ECF No. 67, is DENIED. Defendant's motion to suppress statements, ECF Nos. 67, 95, is also DENIED.

The Court adopts, on clear error review, Magistrate Judge Pedersen's conclusion that severance is not warranted under either Federal Rule of Criminal Procedure 8 or 14 and therefore denies Defendant's motion to sever.

The Court rejects, on *de novo* review, Magistrate Judge Pedersen's conclusion that law enforcement officers subjected Defendant to words that they should have known were reasonably

likely to elicit an incriminating response and therefore denies Defendant's motion to suppress statements.

      IT IS SO ORDERED.

Dated: February 13, 2024
      Rochester, New York

                                        HON. FRANK P. GERACI, JR.
                                        United States District Judge
                                        Western District of New York